**Ralph BAHN, to the use of FARM BUREAU MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**M. SHALEV, Appellee.**

No. 1829.

Municipal Court of Appeals for the District of Columbia.

Argued July 9, 1956.

Decided Oct. 1, 1956.

Donald J. Caulfield, Washington, D. C., with whom John S. Mears and Bond L. Holford, Washington, D. C., were on the brief, for appellant.

F. H. Livingstone, Washington, D. C., with whom Paul J. Sedgwick, Washington, D. C., was on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Farm Bureau Mutual Automobile Insurance Company (hereinafter called Farm Mutual) as use plaintiff of Ralph Bahn

brought suit against defendant Shalev for the amount paid Bahn under an automobile policy indemnifying him against loss by collision or accident. It was stipulated at trial that the collision was caused solely by the negligence of defendant Shalev.

The material facts may be summarized as follows: In February 1952 a vehicle operated by Shalev collided with Bahn's automobile and damaged it to the extent of $212.04. Farm Mutual paid Bahn that amount, less fifty dollars deductible under the terms of the policy, and Bahn in return executed a release and subrogation assignment on March 29, 1952. Shalev and his insurer were notified of this subrogated right. In December 1952 Farm Mutual filed suit against Shalev in Montgomery County, Maryland, and judgment was entered against him; however, by agreement of counsel, this judgment was later vacated and the suit dismissed so that an action could be brought in the Municipal Court for the District of Columbia. In the same month Bahn and his wife filed suit in the United States District Court for the District of Columbia against Shalev and the Embassy of Israel[1] for personal injuries and damage to the automobile.[2] In March 1955 this action was settled and dismissed and in consideration of payment of $3,000 Bahn and his wife executed a release in favor of the Embassy of Israel and Shalev.

In March 1954 Farm Mutual had filed suit in the Municipal Court for the District of Columbia against Shalev for the subrogated amount of property damage. Shalev filed a third party complaint against Bahn alleging that Bahn had filed suit against him in the United States District Court for personal injuries and property damages to the automobile; that this suit had been settled, a full release of all claims having been obtained from Bahn; and that since he had already paid for the property damage, he should be reimbursed that amount by Bahn. Bahn defended, claiming that the settlement of his suit in the District Court did not include property damage to the automobile but only covered medical expenses, pain and suffering, and loss of services. From a finding and judgment in favor of Shalev in the original suit and for Bahn on the third party complaint, Farm Mutual appeals.

The question presented is whether the rights of an insurer subrogee against a wrongdoer may be defeated by the wrongdoer's procurement of a full release from the insured subrogor after receiving notice of the insurer's subrogated rights. We think not. The right of subrogation is based upon principles of equity and natural justice, and courts have liberally applied the principle of subrogation for the protection of those who are its natural beneficiaries.[3] As was stated in Inter Insurance Exchange of Chicago Motor Club v. Andersen, 331 Ill.App. 250, 73 N.E.2d 12, 15, "* * * the purpose of the courts has been to protect the subrogation rights of the insurer, whether the insurer chose to sue the wrongdoer as subrogee or to sue the insured for breach of policy, or both. What lack of unanimity there is arises, it seems, as to how best the protection can be given, whether by blaming the insured or wrongdoer." While the decisions have not been uniform, the general rule seems to be that where the wrongdoer procures a release from the insured with knowledge that the insurance has been paid, the release is no bar to an action by the subrogee insurer against the wrongdoer.[4]

1. Diplomatic immunity was waived.

2. The amount of property damage set forth in the complaint was $212.04 which included the subrogated amount paid Bahn by Farm Mutual.

3. Ocean Accident & Guarantee Corp. v. Hooker Electro-Chemical Co., 240 N.Y. 37, 147 N.E. 351; Powell & Powell v. Wake Water Co., 171 N.C. 290, 88 S.E. 426.

4. City of New York Ins. Co. v. Tice, 159 Kan. 176, 152 P.2d 836, 157 A.L.R. 1233; Potomac Ins. Co. v. MacNaughton, 191 Misc. 362, 77 N.Y.S.2d 110; Ocean Accident & Guarantee Corp. v. Hooker

In applying the rule courts have considered the wrongdoer's knowledge of the insurer's subrogated rights to be of decisive importance. In Ocean Accident & Guarantee Corp. v. Hooker Electro-Chemical Co., 147 N.E. at page 354, footnote 4, it was said:

" * * * when the defendant, chargeable with notice of plaintiff's rights * * *, made a settlement with the [insured] to which the insurer was not a party, [he] must be regarded as having made such settlement subject to and with a reservation of the rights possessed by plaintiff, and with the implication of a consent that the rights of the two parties should become separated even though originally part of an indivisible cause of action."[5]

We must agree, although in fastening ultimate responsibility on the tort-feasor we are mindful that Bahn was also aware that Farm Mutual occupied the position of subrogee and had a right of action against Shalev not under Bahn's control. Notwithstanding this, we think an insurer who has had to pay the insured damages should be reimbursed by the party whose negligence caused such damages.

We hold therefore that the release procured by Shalev did not defeat the rights of Farm Mutual as subrogee and the judgment of the trial court in favor of Shalev should be reversed with instructions to enter judgment for Farm Mutual in the indemnified amount of property damage. Also, on the basis of our reasoning outlined above, we think the trial court's denial of recovery against Bahn was proper.

Judgment in favor of Shalev reversed with instructions.

Electro-Chemical Co., supra; Wolverine Ins. Co. v. Klomparens, 273 Mich. 493, 263 N.W. 724; Powell & Powell v. Wake Water Co., supra; General Exchange Ins. Corporation v. Young, 357 Mo. 1099, 212 S.W.2d 396; Pittsburgh, C., C. & St. L. Ry. Co. v. Home Ins. Co., 183 Ind. 355, 108 N.E. 525; see also 6 Appleman, Insurance Law and Practice, § 4092.

5. See also Potomac Ins. Co. v. MacNaughton, footnote 4; Saber v. Supplee-Wills-Jones Milk Co., 181 Pa.Super. 167, 124 A.2d 620.